IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES LEDDA,** | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | No.: |
| v. | : | |
| | : | |
| **ST. JOHN NEUMANN REGIONAL ACADEMY and DIOCESE OF SCRANTON,** | : : : | |
|     Defendants. | : | JURY TRIAL DEMANDED |

## COMPLAINT

### I. PRELIMINARY STATEMENT

This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, James Ledda (hereinafter "Plaintiff"). Plaintiff was an employee of St. John Neumann Regional Academy (hereinafter "Neumann") and the Diocese of Scranton (hereinafter "the Diocese") in Williamsport, Pennsylvania, who has been harmed by race-based discrimination and retaliatory practices, as well as other improper conduct by Neumann and the Diocese.

This action is brought under Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.

### II. JURISDICTION AND VENUE

1. The jurisdiction and venue of this Court is invoked in this District pursuant to 28 U.S.C. § 1331 as arising under the laws of the United States, and in particular Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.

2. Venue is proper in the Middle District of Pennsylvania as some or all of the events

   complained of herein occurred in Lycoming County, Pennsylvania.

3. All conditions precedent to the institution of this suit have been fulfilled.

4. Plaintiff has invoked the procedure set forth in Title VII.  On or about September 10, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was jointly filed with the Pennsylvania Human Relations Commission ("PHRC"), against Neumann and the Diocese alleging, inter alia, race-based employment discrimination and retaliation.  On January 28, 2020, a Notice of Right to Sue was issued by the EEOC.

5. This action has been filed within ninety (90) days of receipt of said Notice.

### III. PARTIES

6. Plaintiff is a male citizen and resident of the Commonwealth of Pennsylvania.  Plaintiff at all times relevant herein was employed by Neumann and the Diocese.

7. At all times relevant herein, Plaintiff was a "person" and "employee" as defined by Title VII, 42 U.S.C. § 2000e, and is subject to the provisions of said Acts.

8. Neumann is a private Diocese Catholic school within the Diocese of Scranton Catholic School system located at 901 Penn Street in Williamsport, Pennsylvania.

9. The Diocese of Scranton encompasses the counties of Bradford, Lackawanna, Luzerne, Lycoming, Monroe, Pike, Sullivan, Susquehanna, Tioga, Wayne, and Wyoming, including 120 parishes and 20 schools, and is located at 300 Wyoming Avenue in Scranton, Pennsylvania.

10. At all times relevant herein, Neumann and the Diocese were an "employer" and "person" as defined by Title VII, 42 U.S.C. § 2000e, and subject to the provisions of

said Acts.

11. At all times relevant hereto, Neumann and the Diocese acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

12. Neumann and the Diocese have, acting through their agents, servants and representatives, on more than one occasion, met with Plaintiff, and have heard allegations from Plaintiff of race-based harassment, race-based discrimination, and retaliation.

13. At all relevant times herein, Neumann and the Diocese knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

14. At all times material hereto, Neumann and the Diocese employed more than fifteen employees.

## IV. CAUSES OF ACTION

15. Plaintiff is a 54-year-old Caucasian male employee hired by Neumann and the Diocese in or around August 2015 as a social studies teacher.

16. During Plaintiff's employment with Neumann and the Diocese, Plaintiff was qualified for his position and performed his job duties in a proper and competent manner. In fact, he was promoted to chair of the Social Studies Department.

17. At all times relevant hereto, Plaintiff's supervisors were Richard Cummings ("Cummings"), Principal; Jason W.S. Morrison ("Morrison"), Diocesan Secretary of Catholic Education/Chief Operating Officer; and Eugene Kurzejewski

("Kurzejewski"), High School Administrator.

18. On or about December 5, 2018, Plaintiff observed an African-American student using a cell phone.

19. This is against Neumann and the Diocese's policies; all students were informed on the first day of class that if they were found to be in possession of a phone or electronic device, it would be confiscated.

20. Plaintiff approached the student, who is Neumann and the Diocese's top basketball player and expected to be drafted in the future by a professional team (as his older brother was), and requested that the student surrender his cell phone.

21. The student refused, and after Plaintiff made several additional requests, the student accused Plaintiff of being "in his face." The student ultimately threatened Plaintiff, stating that he "would" hurt Plaintiff.

22. Cummings arrived shortly after the threat was made, and Plaintiff reported the threat to Cummings, who said he would "take care" of the situation.

23. Later in the day, however, Plaintiff was informed by Cummings and Kurzejewski that they "met" with representatives of the Diocese, and that Plaintiff was required to take three paid days off and attend "anger management classes."

24. Although Plaintiff had not engaged in any angry or other wrongful behavior, he was compliant with Neumann and the Diocese's requirements.

25. At some point during Plaintiff's three days off, which he took from December 6-10, 2018, another brother of the student who threatened Plaintiff broke Plaintiff's personal property that was in Plaintiff's classroom.

26. Plaintiff reported this to Cummings, who took no action.

27. On or about December 10, 2018, Cummings asked Plaintiff to sign a write-up for the student involved in the December 5, 2018 incident, but the write-up did not include the threat made by the student.

28. Plaintiff believes, and therefore avers, that another teacher had overheard the threat made by the student and had submitted a written statement to Cummings corroborating Plaintiff's report.

29. When Plaintiff asked Cummings about the disciplinary action being taken against the student, however, Cummings simply stated that there would be a "meeting" with the student's mother. The student, however, remained in Plaintiff's class and the "meeting" with Plaintiff never occurred.

30. Shortly after returning on December 10, 2018, Plaintiff became aware of rumors circulating in the school that he had "hit" a student, that he was a racist, and that he was "looking up girls' skirts."

31. Plaintiff became aware that these rumors were being circulated by a female teacher, and reported this to Kurzejewski, and told Kurzejewski that he was going to report this to the Diocese.

32. Around this time, Plaintiff did, in fact, file a complaint with the Diocese. No remedial action was taken against the female teacher by Neumann and the Diocese, however, and the rumors persisted.

33. On or about December 14, 2018, given Neumann and the Diocese's failure to act on the threat made against Plaintiff, he went to the Williamsport Police Department.

34. Over Christmas break, Plaintiff sent a text to the Neumann and Diocesan Director of Religious Education, informing him that the stress of the situation was having a negative impact on Plaintiff's health and wellbeing.

35. Neither Neumann nor the Diocese took remedial action.

36. In or around January 2019, the Diocese of Scranton sent a member of its HR Department to "investigate" Plaintiff's complaint.

37. The Diocese, however, never followed up with Plaintiff, and he was informed in or around March 2019 by Kurzejewski that the investigation remained "ongoing."

38. Because of Neumann and the Diocese's failure to take remedial action against the female teacher, the rumors persisted and worsened, to the point that there were now rumors that one female student was Plaintiff's "favorite."

39. On or about March 29, 2019, Plaintiff wrote an African-American student up for making a crude comment in the hallway.

40. Later that day, Plaintiff had a meeting with the student and Cummings, during which, the student stated that he had heard from "others" that Plaintiff treated African-American students differently from "everyone else."

41. On March 29, 2019, Plaintiff went to Cummings to object to the discriminatory treatment to which he had been subjected by Neumann and the Diocese.

42. Plaintiff specifically told Cummings that he believed that Cummings had mishandled the entire situation, and again emphasized that the wrongdoer was the student, who refused to surrender his cell phone upon proper instruction to do so by Plaintiff based upon Neumann and the Diocese's policies.

43. It became clear to Plaintiff that Cummings had turned the incident around and had reported that Plaintiff had threatened the student, which Plaintiff did not do, and which Cummings knew to be false.

44. Cummings also claimed to have been present during the incident with the student, which video footage will establish to be untrue, and disregarded the statement from another teacher corroborating Plaintiff's report of the incident.

45. Plaintiff was terminated by Neumann and Diocese on April 1, 2019 without cause or justification.

46. Neumann and the Diocese disregarded threats made against Plaintiff and retaliated against him for reporting same due to Plaintiff's race.  Stated otherwise, Plaintiff was terminated because he is Caucasian and the student is African-American.

47. For these reasons, Plaintiff believes that he was discriminated against because of his race.

48. In addition, Plaintiff believes Neumann and the Diocese retaliated against him for engaging in protected conduct.

49. Plaintiff's race was a motivating factor in Neumann and the Diocese's decision to terminate his employment.

50. Neumann and the Diocese were responsible and liable for the conduct of their principals, employees, and agents for subjecting Plaintiff to a discriminatory employment and work environment, and for failing to protect Plaintiff from unlawful conduct.

51. As a direct result of the hostile and antagonistic conduct by Neumann and Diocese's supervisory employees, Plaintiff was deprived of his employment with Neumann and the Diocese.

52. As a direct result of Neumann and the Diocese's conduct, Plaintiff has been irrevocably damaged.

53. As a direct result of Neumann and the Diocese's above-stated conduct, Plaintiff has suffered ongoing back-pay and front-pay losses.

54. As a direct result of Neumann and the Diocese's above-stated conduct, Plaintiff has suffered and continues to suffer emotional, psychological, and physical distress and humiliation.

55. As a direct result of Neumann and the Diocese's above-stated conduct, Plaintiff's career, professional and job opportunities have been impaired and damaged and he has suffered a loss of earnings and earning capacity.

**COUNT I**
**PLAINTIFF v. DEFENDANTS**
**VIOLATION OF TITLE VII**

56. Paragraphs 1 through 55, inclusive, are incorporated by reference as if fully set forth at length herein.

57. Based on the foregoing, Neumann and the Diocese have engaged in unlawful practices in violation of Title VII. The said unlawful practices for which Neumann and Diocese are liable to Plaintiff include, but are not limited to, fostering and perpetuating a hostile and offensive work environment, retaliating against him because of his expressed opposition to offensive race-related conduct in the work place, subjecting him to more

onerous working conditions, and treating him in a disparate manner.

58. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Neumann and the Diocese in violation of Title VII, Plaintiff sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, plus back pay, front pay and interest due thereon.

## COUNT II
## PLAINTIFF v. DEFENDANTS
## RETALIATION UNDER TITLE VII

59. Paragraphs 1 through 58, inclusive, are incorporated by reference as if fully set forth at length herein.

60. By the acts complained of, Neumann and the Diocese have retaliated against Plaintiff for exercising his rights under Title VII, which constitutes a violation of Title VII.

61. Neumann and the Diocese's foregoing continued adverse employment actions and violations, including retaliation against Plaintiff under circumstances giving rise to an inference of discrimination and retaliation, were taken without valid and just cause.

62. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Neumann and the Diocese's retaliatory practices unless and until this Court grants relief.

## STATEMENT OF FACTS JUSTIFYING
## THE IMPOSITION OF PUNITIVE/LIQUIDATED DAMAGES

63. Paragraphs 1 through 62 inclusive, are incorporated by reference as if fully set forth at length herein.

64. At all times relevant hereto, Neumann and the Diocese knew or should have known of the pattern of conduct in which its agents, servants, and representatives had engaged

and in which they continued to engage.

65. At all times relevant hereto, Neumann and the Diocese knew or should have known that the aforesaid pattern of conduct was in violation of law and Neumann and the Diocese's stated policies and terms of employment.

66. Despite such knowledge, Neumann and the Diocese failed to adequately investigate, discipline, or discharge its agents, servants, and representatives who discriminated against Plaintiff by reason of his race.

67. Neumann and Diocese failed and refused to properly protect and support Plaintiff and in fact subjected or permitted him to be subjected to race-based discrimination and retaliation.

68. At all times relevant hereto, Neumann and Diocese acted willfully, wantonly, recklessly, maliciously, and with an outrageous disregard and indifference to the rights, safety, and well-being of Plaintiff and other employees similarly situated; by intentionally deciding to terminate Plaintiff after Plaintiff engaged in protected conduct, Neumann and Diocese exhibited both willfulness and reckless disregard of Plaintiff's rights in the workplace.

69. Plaintiff therefore demands punitive damages.

70. Plaintiff therefore demands liquidated damages.

## V. **PRAYER FOR RELIEF**

71. Paragraphs 1 through 70 inclusive, are incorporated by reference as if fully set forth at length herein.

WHEREFORE, Plaintiff requests this Court to enter judgment in his favor and against

Neumann and the Diocese, and requests that this Court:

    (a)  Exercise jurisdiction over his claims;

    (b)  Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, and severe emotional trauma;

    (c)  Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

    (d)  Order Neumann and the Diocese compensate Plaintiff with a rate of pay and other benefits and emoluments to employment to which he would have been entitled had he not been subject to unlawful discrimination and/or retaliation;

    (e)  Order Neumann and the Diocese compensate Plaintiff with an award of front pay, if appropriate;

    (f)  Order Neumann and the Diocese compensate Plaintiff for the wages and other benefits and emoluments of employment lost, because of their unlawful conducts;

    (g)  Order Neumann and the Diocese pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses as allowable;

    (h)  Order Neumann and the Diocese pay to Plaintiff pre- and post-judgment interest, costs of suit and attorney and expert witness fees as allowed by law; and

    (i)  The Court award such other relief as is deemed just and proper.

## VI. JURY DEMAND

Plaintiff demands trial by jury.

HAHALIS & KOUNOUPIS, P.C.

By: _____
GEORGE S. KOUNOUPIS, ESQUIRE
20 East Broad Street
Bethlehem, PA 18018
(610) 865-2608
Attorneys for Plaintiff

Dated: April 27, 2020