IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES LEDDA,** : | CIVIL ACTION NO. 4:20-CV-700 |
| **Plaintiff** : | (Judge Conner) |
| v. : | |
| **ST. JOHN NEUMANN REGIONAL ACADEMY, DIOCESE OF SCRANTON, RICHARD CUMMINGS, JASON W.S. MORRISON, and EUGENE KURZEJEWSKI,** : | |
| **Defendants** : | |

## **MEMORANDUM**

Plaintiff James Ledda alleges claims of employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. § 951 *et seq.* Defendants, Ledda's former employer and supervisors, move to dismiss the second amended complaint. We will grant defendants' motion and dismiss the second amended complaint with prejudice.

**I.     Factual Background & Procedural History**

Ledda, who is Caucasian, worked for defendants St. John Neumann Regional Academy ("Neumann") and the Diocese of Scranton ("the Diocese") as a social studies teacher. (See Doc. 35 ¶ 20). Ledda avers defendants Richard Cummings, Jason W.S. Morrison, and Eugene Kurzejewski acted as his supervisors, with Cummings serving as Neumann's Principal, Morrison serving as its Secretary of Catholic Education and Chief Operating Officer, and Kurzejewski serving as its

High School Administrator. (See id. ¶¶ 22-23). According to the second amended complaint, Neumann employs no minorities, but many of its students are Black. (See id. ¶ 24). Allegedly, Black and Caucasian students at Neumann were treated differently in numerous ways during Ledda's tenure: Ledda and other faculty "were actively discouraged from imposing discipline" on Black students; Ledda received requests to "artificially and falsely inflate the grades" of Black students; Black students were provided "additional educational opportunities" that Caucasian students were not, such as mentoring or tutoring; and a cell phone confiscation policy was "only enforced against Caucasian students." (See id. ¶¶ 25-27).

On December 5, 2018, Ledda observed a Black student using a cell phone. (See id. ¶ 28). When Ledda approached the student to confiscate the phone in accordance with school policy, the student refused to comply and threatened to harm Ledda. (See id. ¶¶ 32-33). Cummings arrived on scene shortly thereafter and Ledda reported the student's threat. (See id. ¶ 36). Cummings and Kurzejewski followed up with Ledda later that day, informing Ledda they had conferred with the Diocese and he needed to take "three paid days off" and to attend anger management classes. (See id. ¶ 38). Ledda believes these orders originated with Morrison. (See id.)

During Ledda's absence, a Black student purportedly damaged Ledda's personal property in his classroom. (See id. ¶ 42). Ledda reported this incident to Cummings, who "took no action." (See id. ¶ 43). When Ledda returned from his leave of absence, he soon "became aware of rumors" that he had "hit a student" and "was a racist." (See id. ¶ 50). Ledda inquired about whether the student with a cell

2

phone would be disciplined.  (See id. ¶ 47).  Cummings replied there would be a meeting with the student's mother; Ledda, however, was excluded from the meeting.  (See id. ¶¶ 47-49).  In mid-December, Ledda visited the Williamsport Police Department regarding "the threat made against" him.  (See id. ¶ 51).  Ledda also communicated with two nonparties at the school: he texted the Director of Religious Education over Neumann's Christmas break, noting the "situation was having a negative impact" on his health; and he complained to Neumann's Religious Coordinator on an unspecified date about the student cell phone incident and the allegedly "discriminatory nature of Cummings' actions."  (See id. ¶¶ 44, 52).

In January 2019, the Diocese sent a human resources representative to investigate Ledda's complaint.  (See id. ¶ 54).  The second amended complaint does not specify whether this investigation concerned Ledda's reporting of the cell phone incident, his reporting of the personal property incident, his text to the Director of Religious Education, his communication to the Religious Coordinator, or a combination of these events.  Ledda, however, avers the Diocese "never followed up with" him about the investigation.  (See id. ¶ 55).  Instead, Ledda alleges "[d]efendants made it clear that they believed [Ledda] was a racist because of comments made regarding an historical display that [Ledda] created for instructional purposes in his classroom."  (See id. ¶ 56).

On March 29, 2019, Ledda wrote up a different Black student "for making a crude comment in the hallway."  (See id. ¶ 57).  Cummings met with Ledda and the student, during which the student claimed "he had heard" Ledda treated Black students differently than he treated "everyone else."  (See id. ¶ 58).  Ledda avers

3

this was false, because "it was [d]efendants that treated [Black] students differently (more favorably) from 'everyone else.'" (See id. ¶ 59). The same day, Ledda objected to Cummings regarding "the disparate manner in which he was treated" when a situation involved a Black student rather than a Caucasian student, and repeated his belief that the student with the cell phone had been "the wrongdoer" during the December 2018 incident. (See id. ¶¶ 60-61). According to Ledda, Cummings "had turned the incident around" and falsely reported that Ledda, not the student, had made a threat. (See id. ¶ 62). On April 1, 2019, Neumann and the Diocese terminated Ledda. (See id. ¶ 65). Ledda avers that Cummings, Morrison, and Kurzejewski collectively made the decision to terminate his employment. (See id. ¶ 66).

Ledda filed the instant lawsuit in April 2020, and an amended complaint in July 2020. Defendants filed a motion to dismiss, and Magistrate Judge Martin C. Carlson recommended granting defendants' motion. We adopted Judge Carlson's report and recommendation but granted Ledda the opportunity to amend his pleading to cure its factual deficiencies. Ledda filed a second amended complaint alleging racial discrimination and retaliation under state and federal law, and defendants thereafter filed a motion to dismiss the second amended complaint. The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

5

**III.    Discussion**

    **A.    Race Discrimination**[1]

Title VII makes it unlawful for an employer to, *inter alia*, "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). The PHRA similarly makes it unlawful for an employer to discharge an individual due to his race. See 43 PA. STAT. AND CONS. STAT. ANN. § 955(a).[2] Under the McDonnell-Douglas burden-shifting standard, a Title VII plaintiff must typically allege (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination. See Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). In a reverse

---

[1] The second amended complaint makes passing reference to a "hostile work environment" or "race-based harassment." (See Doc. 35 ¶¶ 17, 73). To state a claim under a hostile-work environment theory, a plaintiff must allege "(1) the employee suffered intentional discrimination because of [his race], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same [race] in that position, and (5) the existence of *respondeat superior* liability." See Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007) (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001)). Defendants' motion seeks dismissal of all claims, and Ledda's opposition brief does not brief this theory. (See generally Doc. 41). We therefore consider it abandoned. See Stauffer v. Navient Sols., LLC, 241 F. Supp. 3d 517, 519 n.3 (M.D. Pa. 2017) (Conner, C.J.) (plaintiff's lack of legal support in response to dispositive motion deemed withdrawal of claim).

[2] The court reviews PHRA claims under the same standards as Title VII claims. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000)).

6

discrimination case, however, a plaintiff need only allege facts related to the latter three elements of the *prima facie* case, so that a factfinder could conclude "the defendant treated plaintiff 'less favorably than others because of'" his race. See Iadimarco v. Runyon, 190 F.3d 151, 163 (3d Cir. 1999) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). Plaintiffs may plead the final element through "comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by . . . supervisors suggesting racial animus." See Golod v. Bank of Am. Corp., 403 F. App'x 699, 703 (3d Cir. 2010) (nonprecedential) (citation omitted).

     Having reviewed the instant complaint for factual allegations that would give rise to an inference of racial discrimination against Ledda, we find none. We incorporate and continue to agree with the analysis set forth by Magistrate Judge Carlson in his February 2021 report & recommendation. (See Doc. 31 at 9-19). The second amended complaint has not cured the deficiencies identified by Judge Carlson's report; it still attempts to state a claim by relying "on the assertion that [Ledda's] supervisor, and consequently the Diocese, wrongfully perceived him as a racist," and continues to conflate concepts of race and racism. (See id. at 13-15). Indeed, it doubles down on the allegation that Ledda suffered discrimination because Black students—nonemployees— received favorable treatment from Neumann and the Diocese. (See Doc. 35 ¶¶ 25-27, 30, 40-41, 59, 67). Assuming the truth of these allegations, they

provide no indication whatsoever that defendants terminated Ledda "because of such individual's [here, Ledda's] race." See 42 U.S.C. § 2000e-2(a)(1).

Ledda maintains he is not using the students as comparators, and he need not use comparators to state a *prima facie* case. See Golod, 403 F. App'x at 703; (see also Doc. 41 at 7-9). But the second amended complaint persists in this comparison, alleging defendants treated Black students "differently (more favorably) from everyone else," and that faculty were treated differently "depending on the race of the student involved." (See id. ¶¶ 60, 67). Ledda's briefing also fails to shed any light on this issue, insisting Ledda can "maintain a cause of action where *his own race* was not a dispositive factor," and arguing that "labeling of [Ledda] as a 'racist' is race discrimination." (See Doc. 41 at 12, 13 (emphasis added)). We disagree, and restate Judge Carlson's astute observation that "being identified as a racist does not necessarily carry with it some identification of a person's race." (See Doc. 31 at 15-16). The second amended complaint does not contain facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678. Ledda's claims for race discrimination therefore fail as a matter of law. We also conclude that leave to amend would be futile, as Ledda has twice amended his pleading and still failed to allege a cognizable theory. Therefore, we will not grant leave to amend. Cf. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

## B. Retaliation

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The PHRA likewise forbids discrimination "against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 PA. STAT. AND CONS. STAT. ANN. § 955(d).[3] To establish a *prima facie* case of retaliation under Title VII, a plaintiff must allege that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. See Carvalho-Grevious v.

---

[3] Our court of appeals generally applies the same analytical framework to PHRA retaliation claims as to Title VII retaliation claims. Connelly, 809 F.3d at 791 n.9 (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)). The PHRA, however, contemplates a broader array of protected activity than Title VII, and PHRA retaliation claims do not require a plaintiff to oppose an *employment* practice to engage in protected activity—he may oppose "any practice forbidden by" the PHRA, such as racial discrimination in a public accommodation. See 43 PA. STAT. & CONS. STAT. ANN. §§ 953, 955(d). The second amended complaint does not specify the provision of the PHRA Ledda is invoking, (see generally Doc. 35), nor does the opposition brief argue for application of the PHRA's broader protections, (see Doc. 41 at 6 n.1). Even assuming *arguendo* Ledda intended to invoke the broader prohibition against discrimination in public accommodations, see 43 PA. STAT. AND CONS. STAT. ANN. § 953, no facts indicate any of the defendants, including Neumann as a "private diocese Catholic school," would qualify as a public accommodation. (See Doc. 35 ¶ 13); see Gilbert v. Milton Hershey Sch., No. 1:16-CV-1798, 2017 WL 3727447, at *6 (M.D. Pa. Aug. 30, 2017) (Conner, C.J.) (same for private school).

Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017) (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)).

Under the first prong, Title VII includes an "opposition clause" and a "participation clause." See Slagle v. County of Clarion, 435 F.3d 262, 265-66 (3d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)); see also EEOC v. Allstate Ins. Co., 778 F.3d 444, 452 (3d Cir. 2015). The protection offered by the opposition clause is narrower than that provided by the participation clause. Slagle, 435 F.3d at 266. A plaintiff may be protected by the opposition clause when he "oppose[s] any practice made an unlawful employment practice" by Title VII. See 42 U.S.C. § 2000e-3(a); see also Moore, 461 F.3d at 341. Opposition of practices other than those prohibited under Title VII does not constitute protected activity. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 134 (3d Cir. 2006); Lamb-Bowman v. Del. State Univ., 39 F. App'x 748, 750-51 (3d Cir. 2002) (nonprecedential); Hatcher v. Conifer Realty LLC, No. 1:04-CV-1872, 2007 WL 3237518, at *4 (M.D. Pa. Oct. 30, 2007) (Conner, J.). The plaintiff must also hold "an 'objectively reasonable belief' that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193-94 (3d Cir. 2015) (quoting Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008)). In other words, "[t]he actions underlying the employee's conduct must be activity that Title VII was intended to protect." Rossell v. Cnty. Bank, 270 F. App'x 217, 217 (3d Cir. 2008) (nonprecedential) (citing Slagle, 435 F.3d at 262).

In the matter *sub judice*, the second amended complaint alleges retaliation because Ledda "made a complaint" about Cummings' handling of the cell phone

incident, and also "objected to" the school's allegedly race-based policies concerning student disciplinary issues and educational opportunities. (See Doc. 35 ¶¶ 25-27, 44, 60-61). We assume the truth of these factual allegations, but the problem for Ledda is that his actions do not constitute protected activity because he did not oppose an *employment* practice. See 42 U.S.C. § 2000e-3(a); compare Moore, 461 F.3d at 343 (Caucasian police officers engaged in protected activity by opposing discrimination against Black coworkers) with Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 134-35 (2d Cir. 1999) (Caucasian police officer did not engage in protected activity by opposing coworkers' racist actions against minority citizens). Ledda's allegations that defendants maintained a policy of favoring Black students to the disadvantage of Caucasian students does not contemplate an employment practice because the students lack an employment relationship with defendants. See, e.g., Rossell, 270 F. App'x at 217 (employee who opposed bank's treatment of Black customers not engaged in protected activity); Lamb-Bowman, 39 F. App'x at 751 (same for employee who opposed "disparities between men's and women's athletic programs" at state university); Stankiewicz v. Pump N' Pantry, Inc., No. 3:20-CV-2021, 2021 WL 1392094, at *3 (M.D. Pa. Apr. 13, 2021) (Conner, J.) (same for employee who complained about coworker's treatment of Black customers); Gilbert, 2017 WL 3727447, at *6 (same for teacher who protested school's treatment of Black female students); Hatcher, 2007 WL 3237518, at *4 (same for employee who opposed company's treatment of Black tenants).

    Ledda therefore cannot make out a *prima facie* case of retaliation because his opposition to defendants' alleged preferential treatment of Black students did not

11

relate to an activity that is "unlawful under Title VII."  Cf. Moore, 461 F.3d at 341.  As with the race discrimination claims, we cannot conceive of any facts that could cure this deficiency, and we will not grant leave to amend.  Cf. Fletcher-Harlee Corp., 482 F.3d at 251.

**IV.     Conclusion**

We will grant defendants' motion (Doc. 39) to dismiss.  An appropriate order shall issue.

>                                    /S/ CHRISTOPHER C. CONNER
>                                    Christopher C. Conner
>                                    United States District Judge
>                                    Middle District of Pennsylvania

Dated:     March 9, 2022